**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2650-24

AHIKAM BENNAIM,

     Plaintiff-Appellant,

v.

JDNB CAPITAL HOLDINGS, LLC,
KARA A. KACZYNSKI, ESQ. and
MCNALLY, YAROS, KACZYNSKI
& LIME, LLC,

     Defendants-Respondents.

_____

Submitted March 17, 2026 – Decided April 7, 2026

Before Judges Susswein and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1476-21.

Helmer, Conley & Kasselman, PA, and Law Office of John E. Shields, Jr., LLC, attorneys for appellant (Patricia B. Quelch, of counsel and on the briefs; John E. Shields, Jr., on the briefs).

Lewis Brisbois Bisgaard & Smith LLP, attorneys for respondents Kara A. Kaczynski, Esq. and McNally, Yaros, Kaczynski & Lime, LLC (Meredith Kaplan

Stoma, of counsel and on the brief; Anthony A. Doss, on the brief).

PER CURIAM

In this appeal of a dispute concerning the administration of a commercial loan, plaintiff Ahikam BenNaim challenges a March 20, 2025 Law Division order granting summary judgment to defendants Kara A. Kaczynski, Esq. and McNally, Yaros, Kaczynski & Lime, LLC ("MYKL"). We affirm.

I.

We summarize the facts from the motion record in a light most favorable to plaintiff as the non-moving party. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995); see also R. 4:46-2(c). Plaintiff is a businessman and real estate investor. In September 2020, plaintiff was approached by members of JDNB Capital Holdings, LLC ("JDNB") regarding a short-term loan opportunity whereby he would loan $200,000 to JDNB. JDNB provided plaintiff with a one page "Bridge Loan Package," which stated that the requested funds would be held in the escrow account of their counsel, Kara Kaczynski, Esq., and her law firm, MYKL, and returned to him with interest within six months once JDNB was "capitalized" by a senior lender. The Bridge Loan Package identified Kaczynski and her firm as JDNB's "legal team."

2

After plaintiff and JDNB had negotiated the agreement, MYKL was retained by JDNB to prepare two notes, each for $100,000, in connection with the agreement. Kaczynski was not aware of the Bridge Loan Package solicitation document, denied authorizing JDNB to list her as their legal representative on that document, and denied knowing that JDNB represented to plaintiff that his funds would be held in her escrow account.

After executing a non-disclosure agreement, plaintiff was provided with two draft promissory notes which included language that the loans would be transferred to MYKL's trust account. Plaintiff requested various modifications to the note, and JDNB obliged without objection. Plaintiff then participated in a telephone call with JDNB member Nicholas Webb and Kaczynski. Plaintiff testified at deposition that he was almost one-hundred percent certain that the call included discussions of the representation made in the Bridge Loan Package—that the funds would be wired to Kaczynski's escrow account. In contrast, Kaczynski testified to having advised her client "[she] was not going to have any discussions with [plaintiff] concerning the terms" of the notes that were already agreed on and that plaintiff should have an attorney present if he wished to discuss terms.

3

A-2650-24

Plaintiff, contrary to defendants' suggestions, chose not to enlist the services of counsel to review the documents on his behalf. Furthermore, plaintiff testified that he conducted no due diligence as to JDNB's background—including, judgment searches, credit checks, and references.

After plaintiff signed the notes, he wired $200,000 to MYKL's trust account. Unequivocally, the notes as executed by the parties neither reference escrow nor require funds to be dispersed incrementally or with plaintiff's approval or knowledge.

Once the notes reached maturity, plaintiff communicated directly with members of JDNB but was not repaid any portion of the loan. Plaintiff then sent an email to Kaczynski seeking confirmation that the $200,000 was still in escrow, but Kaczynski did not respond. Eventually, plaintiff sent an email to Kaczynski, stating he had tried to contact her over 100 times and requested the name of the managing partner. Kaczynski replied that she was the managing member but declined to answer whether she still had the funds, citing client confidentiality. After litigation commenced, Kaczynski acknowledged that she had transferred the entire $200,000 to JDNB shortly after receiving the funds, without seeking plaintiff's authorization or notifying him of the transfer.

4

Plaintiff filed suit against JDNB in July 2021. JDNB was served but did not answer, and default was entered. Plaintiff then amended his complaint, adding Kaczynski and MYKL, alleging professional negligence and breach of duties as an escrow holder. Final judgment by default was entered against JDNB for $284,000 plus court costs.

In the interim, Kaczynski and MYKL filed a declaratory judgment action against Preferred Professional Insurance Company ("Preferred") and Coverys Specialty Insurance Company ("Coverys"), alleging wrongful denial of coverage for plaintiff's complaint. The declaratory judgment action was consolidated with the professional negligence action for discovery purposes in January 2024. Preferred and Coverys moved for summary judgment and Kaczynski and MYKL cross-moved for summary judgment. Summary judgment was granted in favor of Kaczynski and MYKL and against Preferred and Coverys on the declaratory judgment complaint for coverage.

Following the conclusion of discovery, Kaczynski and MYKL moved for summary judgment against plaintiff. On March 20, 2025, the court granted summary judgment in favor of defendants.

This appeal follows.

5

## II.

We review de novo the trial court's summary judgment decision, employing the same Brill standard that governed the trial court. See In re Est. of Jones, 259 N.J. 584, 594 (2025). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

## III.

### A.

We first address plaintiff's claim that there were material facts in dispute precluding the court from granting summary judgment. We are not persuaded.

"To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 450, 472 (2020) (alteration in original)

6

(quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 8, 13 (2021) (quoting Brill, 142 N.J. at 540). Accordingly, this standard requires the Court to conduct its analysis in light of the elements and evidentiary standard governing the cause of action. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014).

In order to hold defendants liable, plaintiff must prove: "(1) the existence of an attorney-client relationship creating a duty of care upon the attorney; (2) the breach of that duty; and (3) proximate causation." Conklin v. Hannoch Weisman, 145 N.J. 395, 416 (1996) (quoting Lovett v. Estate of Lovett, 250 N.J. Super. 79, 87 (Ch. Div. 1991)); see also Cortez v. Gindhart, 435 N.J. Super. 589, 598 (App. Div. 2014) (internal citations omitted) (including actual damages as a final element of the cause of action).

Plaintiff stresses that where credibility is at issue, summary judgment is inappropriate. In re Estate of DeFrank, 433 N.J. Super. 258, 266 (App. Div. 2013) (internal citations omitted). He contends the trial court's determination that Kaczynski had no knowledge of the "Bridge Loan Package" rested upon the court finding her more credible than plaintiff. To bolster his assertion, plaintiff

7

argues defendants must have had knowledge of the "Bridge Loan Package" given Kaczynski: (1) testified to have been "representing [JDNB] in various real estate transactions at the time that [plaintiff] was solicited to invest money"; (2) confirmed the properties listed on the "Bridge Loan Package" "look[ed] familiar"; and (3) despite disputing the discussion as plaintiff recalls them, confirmed she was on the telephone conference between Nicholas Webb and plaintiff. Accordingly, plaintiff ultimately asserts that, given Kaczynski's admissions in her deposition, the court must have determined her testimony was more credible than plaintiff's conflicting testimony.

That assertion is unavailing as the court's oral decision makes no reference to credibility. Instead, the court granted summary because plaintiff failed to prove: (1) that the defendants were aware of the representations JDNB made to plaintiff; (2) that there was an escrow agreement between the parties; and (3) that defendants owed a legal duty to plaintiff.

Plaintiff's testimony that he was almost certain they talked about the money going to her escrow account does not change this analysis because the notes specifically refer to a trust account, not an escrow account. Moreover, Kaczynski's sworn deposition testimony belies plaintiff's assertion that she either had knowledge of the "Bridge Loan Package" or an agreement to hold the

 A-2650-24

funds in escrow. Accordingly, without material facts in dispute that would assist plaintiff in proving his cause of action, the court acted properly in determining that, as a matter of law, summary judgment was appropriate.

B.

We next address, and reject, plaintiff's claim that Kaczynski and MYKL owed a duty to him with respect to his funds. In this regard, our Supreme Court's recent decision in Christakos v. Boyadjis, 262 N.J. 447 (2026), is instructive. In Christakos, the Court formally adopted the standard set forth in Section 51 of the Restatement (Third) of the Law Governing Lawyers, to determine when an attorney owes a duty to a non-client. Id. at 458. This standard had been relied on in prior cases. See e.g., Petrillo v. Bachenberg, 139 N.J. 472, 483-84 (1995); Pivnick v. Beck, 165 N.J. 670, 671 (2000); Banco Popular N. Am. v. Gandi, 184 N.J. 161, 179-80 (2005).

Pursuant to Restatement (Third) of the Law Governing Lawyers, § 51:

> For the purposes of liability under § 48,[1] a lawyer owes a duty of care within the meaning of § 52 in each of the following circumstances:
>
> (1) to a prospective client . . . ;
>
> (2) to a nonclient when and to the extent that:

---

[1] § 48 regards professional negligence.

(a) the lawyer or (with the lawyer's acquiescence) the lawyer's client invites the nonclient to rely on the lawyer's opinion or provision of other legal services, and the nonclient so relies; and

(b) the nonclient is not, under applicable tort law, too remote from the lawyer to be entitled to protection;

(3) to a nonclient when and to the extent that:

(a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;

(b) such a duty would not significantly impair the lawyer's performance of obligations to the client;

(c) the absence of such a duty would make enforcement of those obligations to the client unlikely; and

(4) to a nonclient when and to the extent that:

(a) the lawyer's client is a trustee, guardian, executor, or fiduciary acting primarily to perform similar functions for the nonclient;

(b) the lawyer knows that appropriate action by the lawyer is necessary with respect to a matter within the scope of the representation to prevent or rectify the breach of a fiduciary duty owed by the client to the nonclient, where (i) the breach is a crime or fraud or (ii) the lawyer has assisted or is assisting the breach;

(c) the nonclient is not reasonably able to protect its rights; and

A-2650-24

(d) such a duty would not significantly impair the performance of the lawyer's obligations to the clients.

[Restatement (Third), § 51.]

Our Court has interpreted and applied this language to hold: (1) attorneys may owe a duty of care to nonclients when the attorney knew, or should have known, that the nonclient will rely on the attorney's representations, Petrillo, 139 N.J. at 483-84; and (2) courts must evaluate whether the attorney invited the nonclients reliance—the invitation to rely is imperative, Banco Popular, 184 N.J. at 181; see also Restatement (Third) of the Law Governing Lawyers, § 51 cmt. f (expressing the importance of inviting reliance).

Plaintiff's argument is rooted in his subjective understanding that his loan was going into an escrow account; thus, he asserts that even though he was advised to get his own attorney, he assumed Kaczynski was to represent his interests. Generally, a non-client cannot show that the adverse party's attorney owed them a duty of care. See LoBiondo v. Schwartz, 199 N.J. 62, 101 (2009). Thus, "the grounds on which any plaintiff may pursue a malpractice claim against an attorney with whom there was no attorney-client relationship are exceedingly narrow." Green v. Morgan Props., 215 N.J. 431, 458 (2013); see also Restatement (Third) of the Law Governing Lawyers, § 51 cmt. b (discussing

11

the importance of limiting an attorney's duty of care to nonclients because "[m]aking lawyers liable to nonclients . . . could tend to discourage lawyers from vigorous representation").

Plaintiff seeks to analogize his facts with In re Hollendonner, 102 N.J. 21 (1985). In Hollendonner, an attorney misappropriated escrow funds for personal use. Id. at 22-23. Accordingly, the Court held that: (1) escrow holders act as an agent for both parties, Id. at 26-27 (first citing Mathis v. Yarak, 71 N.J. Super. 234, 238 (App. Div. 1961) and then citing Cooper v. Bergton, 18 N.J. Super. 272 (App. Div. 1952)); and (2) as an escrow agent, the attorney owed a fiduciary duty to both their client and the nonclient, id. at 27. Further, the Hollendonner court expressed:

> . . . it is a matter of elementary law that when two parties to a transaction select the attorney of one of them to act as the depository of funds relevant to that transaction, the attorney receives the deposit as the agent or trustee for both parties. The parallel between escrow funds and client trust funds is obvious. So akin is the one to the other that henceforth an attorney found to have knowingly misused escrow funds will confront the disbarment rule . . . .
>
> [Id. at 28-29 (emphasis added) (internal citations omitted).]

Thus, plaintiff argues that, regarding attorney trust accounts and escrow accounts, this is a distinction without a difference—Hollendonner treats the two as the same.

The trial court determined that Hollendonner was not applicable to plaintiff's matter because Meisels v. Fox Rothschild LLP, 240 N.J. 286 (2020), was more squarely on point. In Meisels, a nonclient sued Fox Rothschild for conversion and breach of fiduciary duty after the firm accepted funds into its trust account as an intermediary. Id. at 291-92. When Fox Rothschild received the funds there were no instructions, limitations, or conditions regarding distribution; accordingly, the firm distributed the funds as directed by its client. Id. at 292. Ultimately, the Court held that Fox Rothchild owed no duty to the nonclient because the firm was neither aware of the nonclient nor their claim to the funds. Ibid. Additionally, the Court highlighted that attorneys owe a duty to individuals who they know, or should know, will rely on them in a professional capacity—notably, this requires considerations of fairness. Id. at 300-01 (citing Petrillo, 139 N.J. at 484). Lastly, the Meisels Court distinguished Hollendonner by noting, unlike the attorney in Hollendonner, Fox Rothschild never became an escrow agent; thus, "Meisels [was] mistaken to rely on case

law addressing the duties of escrow agents when the firm never undertook such a role." Id. at 301.

We agree that Hollendonner does not apply, because plaintiff makes the same mistake the Meisels Court pointed out—trying to show a duty of care existed by citing case law regarding escrow agreements. See Meisels, 240 N.J. at 301. It is uncontested that the notes referred to the money going to MYKL's trust account, and that no escrow agreement existed. Further, although JDNB misrepresented, via the Bridge Loan Agreement, that the funds would be held in escrow, Kaczynski's sworn deposition testimony indicates she had no knowledge of, nor consented to, the representations contained within the Bridge Loan Package.

The plain terms of the note give no indication that the money would be held or untouched, in escrow. The first paragraphs expressly provide for "payment out of other assets that you may own." Insofar as plaintiff contemplated that payment from other assets might be necessary, this is an implicit acknowledgment that the money would not remain untouched in an escrow account. Furthermore, even insofar as JDNB induced plaintiff's reliance, nothing in the record indicates that Kaczynski or MYKL played any role in that inducement. Instead, defendants: (1) drafted notes in accordance with the terms

provided by their client; (2) provided plaintiff an opportunity to review and request changes to the notes; (3) encouraged plaintiff to seek counsel to review the notes—which plaintiff chose not to do; and (4) disbursed the funds, because there was no disbursement limiting language in the notes, in accordance with the instructions from the client.

Even assuming arguendo that a dispute of material fact existed pursuant to the conversations during the conference on the note, where plaintiff testified that he is "almost a hundred percent" sure the parties discussed escrow when speaking about the terms of the note, plaintiff could still not prevail as a matter of law. Indeed, if plaintiff's version of the facts were true, he may have a stronger argument regarding duty; however, plaintiff would still be required to prove breach, proximate cause, and actual damages. See Conklin, 145 N.J. at 416; Cortez, 435 N.J. Super. at 598. As such, and considering the plaintiff's burden of proof, mere disagreement—without tangible evidence—as to the contents of the conversation is insufficient to create a material fact in dispute to defeat summary judgment.

Under the above standards, plaintiff—a nonclient—cannot establish that defendants owed him a duty. There was neither an escrow agreement between the parties nor are there facts or evidence that indicate defendants induced

15

plaintiff's reliance. Unfortunately, plaintiff made a bad business deal; the negative ramifications of which were compounded by his refusal to enlist independent counsel. Certainly, plaintiff has a legitimate claim against JDNB; however, he cannot extend that cause of action against an attorney who, without language limiting their actions, drafted notes and disbursed the funds accordingly pursuant to the client's instructions.

Plaintiff's assertion that Rule 1:21-6 does not require attorneys to maintain separate trust accounts and escrow accounts is entirely unpersuasive. Although this Rule does not mandate attorneys to maintain both trust accounts and escrow accounts, plaintiff's contention fails because the Rule clearly distinguishes between trust accounts and fiduciary accounts—i.e., escrow accounts. See R. 1:21-6(a)(1) (requiring attorneys to maintain trust accounts "separate from any business and personal accounts and from any fiduciary accounts that the attorney may maintain as executor, guardian, trustee, or receiver, or in any other fiduciary capacity"); see also In re Cozzarelli, 225 N.J. 16 (2016) (analyzing escrow accounts as fiduciary accounts).

C.

Plaintiff's final claim is that the notes were ambiguous and therefore must be construed against the drafter. We disagree.

16

Generally, ambiguities are construed against the drafter because the drafter is presumed to have protected its own interests and "chose the words that may be susceptible to different meanings." Kieffer v. Best Buy, 205 N.J. 213, 224 (2011). Notably, this standard has been used in documents pertaining to lenders and borrowers. See In re Miller's Estate, 90 N.J. 210, 221 (1982).

An ambiguity exists where there are two reasonable alternative interpretations. M.J. Paquet, Inc. v. N.J. Dept. of Transp., 171 N.J. 378, 396 (2002). "'[W]hether a contract provision is clear or ambiguous is a question of law[,]'" Twp. of White v. Castle Ridge Development Corp., 419 N.J. Super. 68, 74 (App. Div. 2011) (quoting Grow Co. v. Chokshi, 403 N.J. Super. 443, 476 (App. Div. 2008)); however, the resolution of ambiguities is a question of fact. Michaels v. Brookchester, Inc., 26 N.J. 379, 388 (1958). Nevertheless, even where an ambiguity exists, a jury does not necessarily need to resolve the ambiguity unless it creates a genuine issue of material fact. Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 137 (3d Cir. 1993). Rather, summary judgment is precluded when the "scope of the . . . agreement cannot be determined by solely relying upon the parties' writing, which may be plausibly interpreted in different ways[.]" Grow Co., 403 N.J. Super. at 476.

17

Despite plaintiff's contention that confusion arose because the notes contain no explanation regarding disbursement of the funds, the notes are not ambiguous. The notes clearly articulate that Borrower, JDNB, received a "loan" from plaintiff. In light of the plain meaning of the term "loan," and without an escrow agreement, there is no indication in the notes to imply that the money was to be held, untouched, in the trust account. Further, there are no terms of the note which would lead to an interpretation that Kaczynski was required to inform plaintiff when the funds were being disbursed. Plaintiff had the opportunity to suggest amendments to the notes and defendants conformed with each of his suggestions. To the extent plaintiff felt the notes were ambiguous, or required language conditioning disbursement, he not only had the opportunity to include that language, but further, he expressly declined the opportunity to have counsel present. Thus, the terms of these notes are neither ambiguous nor subject to multiple or competing interpretations.

To the extent we have not addressed any of the remaining arguments of plaintiffs, we conclude they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

18                                                    A-2650-24